UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANTHONY and GLADYS FLEETWOOD, ) <br> Husband and Wife; WOLVERINE, ) <br> INC., a Washington Corporation; ) <br> and REX and LUCINDA E. ROZMUS, ) <br> Husband and Wife, ) <br>                                  ) <br>                 Plaintiffs,    ) <br>                                  ) <br>      -vs-                        ) <br>                                  ) <br> STANLEY STEEMER INTERNATIONAL,   ) <br> INC., an Ohio corporation,       ) <br>                                  ) <br>                 Defendant.       ) <br>                                  ) | NO.  CV-09-0152-LRS <br><br> ORDER RE: SUMMARY JUDGMENT <br> MOTIONS |

BEFORE THE COURT is Plaintiffs Lucinda and Rex Rozmus's Motion for Partial Summary Judgment, Ct. Rec. 79; Defendant Stanley Steemer International's Motion for Summary Judgment Regarding Rex and Lucinda Rozmus, Ct. Rec. 94; and Defendant Stanley Steemer International's Motion for Summary Judgment Regarding Fleetwood Plaintiffs, Ct. Rec. 99.  These motions were heard with oral argument on June 10, 2010, at which time the court indicated the motions would be considered under advisement.

**I.   UNDISPUTED BACKGROUND FACTS**

**A.   FACTS SPECIFIC TO ROZMUS PLAINTIFFS**

Plaintiff Rex Rozmus operated a Stanley Steemer carpet cleaning business from August 1, 2003 until June 2, 2008.  Mr. Rozmus and his family members had a history of business experience with Defendant

ORDER - 1

Stanley Steemer.  Rozmus had 10-12 years of employment with Defendant before becoming a franchisee.  When purchasing the franchise rights from Stanley Steemer, Mr. Rozmus first was given a copy of Stanley Steemer's offering circular pursuant to Washington law and federal regulations. The offering circular was accompanied by a transmittal letter.  The offering circular highlighted the integration clause in the Franchise Agreement as an "important provision[]" of the agreement and explained the meaning of that clause: "Only the terms of the Franchise Agreement are binding. Any other promises or representations are unenforceable."

On August 1, 2003, Mr. Rozmus executed a Stanley Steemer International, Inc. Franchise Agreement with Defendant Stanley Steemer ("Franchise Agreement").  Beginning in late 2006 and continuing through 2007, Mr. Rozmus experienced cash flow problems which increased in severity over time.  Mr. Rozmus began to get behind on royalties and other payments owing to Defendant. The Franchise Agreement provided that Stanley Steemer could terminate the agreement if Mr. Rozmus failed to pay any sum due to Stanley Steemer or any affiliate of Stanley Steemer within the proper time for paying that debt.

By February 2, 2007, Mr. Rozmus was in default, owed Stanley Steemer $62,915.79 (with much of that money being 120 days past due), and thus had materially breached the Franchise Agreement.  Stanley Steemer sent Mr. Rozmus a letter stating that Mr. Rozmus was in default of his obligations under the Franchise Agreement.  The February 2, 2007 letter explained that Mr. Rozmus owed Stanley Steemer $62,915.79, that a

significant portion of that debt was over 120 days past due, and that he "now [had] thirty (30) days from the date of [his] receipt of this letter in which to bring all of [his] past due obligations current." The February 2, 2007 letter further explained that, if Mr. Rozmus was unable to cure his default within the thirty day period, Stanley Steemer would "have no alternative but to proceed to terminate [his] Franchise Agreement in accordance with the appropriate provisions thereof."

Before the automatic termination of his Franchise Agreement at the expiration of the cure period, Mr. Rozmus told Stanley Steemer that he would not be able to cure within the thirty day cure period and asked Stanley Steemer for more time to cure. On February 26, 2007, Stanley Steemer mailed Mr. Rozmus an agreement that essentially operated as a forbearance agreement. This agreement, entitled Franchise Termination Agreement, acknowledged that the earlier Franchise Agreement was terminated. However, it also set forth the terms and conditions under which Stanley Steemer would give Mr. Rozmus time to cure his earlier defaults and an opportunity to enter into a new Franchise Agreement. Mr. Rozmus chose to ask for more time in which to cure his defaults and signed the Franchise Termination Agreement.

Mr. Rozmus executed a promissory note dated February 28, 2007, pursuant to the Franchise Termination Agreement. In doing so, Mr. Rozmus promised to pay $67,025.13 with interest thereon at the rate of ten percent (10%) per annum. The principal sum and interest were due under the note in forty-eight (48) consecutive equal monthly installments of

ORDER - 3

$1,699.93.

Mr. Rozmus failed to make payments on the promissory note and failed to stay current on his financial obligations to Stanley Steemer and on payments due to third party creditors. Mr. Rozmus became increasingly delinquent in his payment obligations from March 2007 through April 2008. Mr. Rozmus defaulted on the Franchise Termination Agreement and was then informed of that default. The Franchise Termination Agreement was terminated in writing on April 25, 2008. As of April 30, 2010 the balance due and owing on the note was approximately $69,767.15

On April 30, 2008, Mr. Rozmus spoke with Ryan Jankowski, Vice President and Corporate Counsel of Stanley Steemer regarding the termination of his right to continue operating the Tri-Cities area franchise. During this call, Mr. Rozmus asked for more time to cure and acknowledged that he was incapable of curing his defaults. Mr. Rozmus asked who was going to service customers until the territory could be transitioned to a new owner. This was also a concern for Stanley Steemer.

On or about May 2, 2008, Stanley Steemer and Mr. Rozmus entered into another agreement where they agreed that in exchange for Stanley Steemer forgiving the unpaid bills Mr. Rozmus owed to it ($102,273.84) and paying his debts to third party creditors ($213,726.16), Mr. Rozmus would continue to operate the business until a new franchisee was found, and would participate and assist in transitioning the franchise area to a new owner. Stanley Steemer made the payments and forgave the bills, as promised. Mr. Rozmus operated the business pursuant to this agreement

ORDER - 4

until approximately June 2, 2008 and assisted in the orderly transition of the business to the new franchisee who took over the Tri-Cities area.

At no time between the time Mr. Rozmus was notified that the Franchise Termination Agreement was being terminated and when the area was transitioned to a new franchisee did Mr. Rozmus cure his defaults (418-day extended period to cure granted pursuant to the Franchise Termination Agreement.)  Mr. Rozmus affirmatively told Stanley Steemer he could not cure. It is undisputed that both parties performed those duties each contracted for pursuant to the Franchise Termination Agreement.

On June 4, 2008, Mr. Rozmus sent an e-mail to Mr. D. Ryan Jankowski[1] thanking him for helping him and informing Stanley Steemer that he had sent his outstanding bills for Stanley Steemer to pay on his behalf.

**B.   FACTS SPECIFIC TO FLEETWOOD PLAINTIFFS**

On January 1, 1997, Anthony Fleetwood acquired the Stanley Steemer business for the Spokane market (Spokane County, Washington, and Kootenai County, Idaho) from Dominique J. (D.J.) Krause.  Mr. Fleetwood had a great deal of experience in the carpet-cleaning business, having worked at Stanley Steemer for twelve years prior to running his own Stanley Steemer franchise.  Mr. Fleetwood paid $50,000 to the previous franchise owner for the Stanley Steemer franchise for the Spokane market.  Mr. Fleetwood obtained financing for this transaction through Bank One, NA

---

[1]D. Ryan Jankowski is Vice President and Corporate Counsel of Stanley Steemer International, Inc.

ORDER - 5

("Bank One"). Stanley Steemer guaranteed the Bank One loan to accommodate the loan to Mr. Fleetwood.

Mr. Fleetwood established a revolving line of credit with Stanley Steemer in the amount of $50,000 on January 1, 1997. On January 2, 1997, Mr. Fleetwood executed a Stanley Steemer International, Inc. Franchise Agreement (the "Franchise Agreement") that gave Mr. Fleetwood the franchise rights for the Spokane market. Stanley Steemer did not require Mr. Fleetwood to pay an initial franchise fee or a transfer fee at the time the purchase was made.

The Franchise Agreement expressly stated that no fiduciary relationship exists between the parties. The Franchise Agreement also stated that if the Franchise Owner (franchisee) fails to pay any sum due to Stanley Steemer or any affiliate of Stanley Steemer within the time for paying the same without penalty or if Franchise Owner fails to comply with any of the substantial provisions of this agreement, then Stanley Steemer could terminate the agreement. The Franchise Agreement also contained an integration clause.

Before Mr. Fleetwood's purchase of the franchise business from Mr. Krause, Stanley Steemer provided Mr. Fleetwood with a Uniform Franchise Offering Circular that described the franchise operation and made certain disclosures to him. The Offering Circular identified the integration clause contained in Article XVII ¶ E as an "important provision" of the Franchise Agreement and explained the meaning of that clause: "Only the terms of the Franchise Agreement are binding. Any other promises or

representations are unenforceable."

On January 1, 1998, Mr. Fleetwood's line of credit was increased to $100,000. Mr. Fleetwood was only required to make quarterly interest payments if he chose to draw on the line of credit. However, Mr. Fleetwood was delinquent in the payment of royalties and other fees due under the Franchise Agreement between 1997 and 2000.

In May of 2000, Stanley Steemer contacted Mr. Fleetwood to inform him of these defaults and discuss his plans to cure. As a result of the discussions, Mr. Fleetwood's past-due obligations to Stanley Steemer, the Stanley Steemer line of credit and the Bank One indebtedness to which Stanley Steemer was a guarantor were consolidated into a Promissory Note dated May 30, 2000, in the principal amount of $190,122.48 ("May 2000 Note"). Mr. Fleetwood continued to be delinquent in his payment obligations to Stanley Steemer between May 2000 and June 2001 under both the consolidated note and the Franchise Agreement.

On June 22, 2001, Stanley Steemer notified Mr. Fleetwood in writing that he was delinquent in his payments owed to Stanley Steemer, resulting in a material breach of the Franchise Agreement. In response to the June 22, 2001 letter, a new repayment plan was agreed to by the parties on June 29, 2001. Following this June 29, 2001 arrangement, Mr. Fleetwood continued to default on his payment obligations by failing to make franchise royalty payments when due and failing to make payments under the May 2000 note. By May 2002, Mr. Fleetwood's payment delinquencies to Stanley Steemer totaled approximately $247,157.71. On May 2, 2002,

ORDER – 7

Stanley Steemer issued to Mr. Fleetwood a "Notice to Cure Breach of Franchise Agreement—Delinquent Royalty Fees."

The May 2002 notice to cure indicated the amounts due and that failure to pay royalty fees due constituted a material breach of the Franchise Agreement. The notice indicated that in accordance with Article XIII.B.2 of the Franchise Agreement, Mr. Fleetwood had thirty (30) days from the date of the receipt of the letter in which to bring all of his royalty payment obligations current. Finally, the notice to cure indicated that Stanley Steemer would proceed to terminate Fleetwood's franchise and agreement in accordance with the appropriate provisions if Mr. Fleetwood's payment obligations were not brought current within the 30-day cure period.

Following the May 2002 notice to cure, Mr. Fleetwood notified Stanley Steemer that he would be unable to cure his outstanding defaults without additional assistance from Stanley Steemer. Stanley Steemer in turn advised Mr. Fleetwood that it was unwilling to provide him with any further assistance unless it was given adequate assurance that he would perform as agreed.

On May 31, 2002, as a result of the foregoing discussions, the parties entered into an agreement entitled "Franchise Termination Agreement." Under this agreement (which recited termination of the earlier Franchise Agreement), Mr. Fleetwood was allowed more time to cure his defaults. He was permitted to continue operating the Stanley Steemer business in the Spokane market on a day-to-day basis on the condition

ORDER - 8

that he comply with the terms of the Franchise Termination Agreement, cure his prior defaults under the original Franchise Agreement, comply with the incorporated terms of the original Franchise Agreement, execute a note[2] in favor of Stanley Steemer, and to "make all payments required thereunder in a timely manner." The Franchise Termination Agreement contained an integration clause. (Agreement ¶ 7.)

In October 2002, Mr. Fleetwood requested additional credit from Stanley Steemer to pay for equipment he had purchased for use in running the business. Stanley Steemer agreed to provide credit to Mr. Fleetwood, and that obligation was consolidated into Mr. Fleetwood's existing obligations and memorialized in an Addendum[3] to the Stanley Steemer International, Inc. Franchise Termination Agreement ("Addendum") dated October 23, 2002. Following execution of the Addendum, Mr. Fleetwood failed to make two of the next three payments due under the Addendum and became increasingly delinquent on his payment obligations from February 2003 through April 2004. By April 2004, Mr. Fleetwood's payment delinquencies under the Franchise Termination Agreement and the October 2002 note totaled $360,590.

On April 27, 2004, as a result of these delinquencies, the parties entered into a Second Addendum ("Second Addendum") to the Franchise

---

[2]Stanley Steemer consolidated all of Mr. Fleetwood's debts with Stanley Steemer into a new promissory note in the principal amount of $254,162.58.

[3]Pursuant to the Addendum, Mr. Fleetwood executed a new promissory note to Stanley Steemer, dated October 23, 2002, in the principal amount of $277,160.83.

ORDER - 9

Termination Agreement. Under this Second Addendum, Mr. Fleetwood's past-due obligations were consolidated into a new note in the principal amount of $360,590 that provided for 0% interest and no payments for one year. These terms allowed Mr. Fleetwood additional cash flow to meet his obligations.

Mr. Fleetwood was not able meet the payment obligation under the 2004 agreement. As a result, the parties entered into a Third Addendum to the Franchise Termination Agreement on May 5, 2005. In connection with the Third Addendum, Mr. Fleetwood issued a new promissory note to Stanley Steemer dated May 5, 2005, in the principal amount of $360,590. The May 2005 note called for interest at 8% per annum, but amounts due under the note were to be paid as an additional 3% of Mr. Fleetwood's gross sales from his business until paid in full.

On or about August 1, 2005, Mr. Fleetwood executed Lease Agreement #2966.01 ("Lease #2966.01"), in connection with his lease of three 2005 Ford E250 vans from Huntington National Bank. The lease was executed on behalf of Wolverine, Inc.,[4] and guaranteed by Mr. Fleetwood. Pursuant to the terms of Lease #2966.01, the Plaintiffs were obligated to pay $1,953.71 per month for 84 months. Stanley Steemer guaranteed the payments due and owing under Lease #2966.01. On or about September 23, 2005, Mr. Fleetwood executed Lease Agreement #2966.02 ("Lease #2966.02"), in connection with his lease of two additional 2005 Ford E250 vans from

---

[4]In addition to the individual Plaintiffs, Wolverine, Inc., the company formed by Mr. Fleetwood through which to operate his franchise, was also named as a plaintiff.

Huntington National Bank.[5]    The lease was executed on behalf of Wolverine, Inc., and guaranteed by Mr. Fleetwood, individually.  Pursuant to the terms of Lease #2966.02, the Plaintiffs were obligated to pay $1,302.43 per month for 84 months.    Stanley Steemer guaranteed the payments due and owing under Lease #2966.02.

Beginning in 2007, Mr. Fleetwood became increasingly delinquent in the payment of his monthly royalties and other obligations due under the Franchise Termination Agreement, as amended by the Third Addendum.  From July through September 2008, Stanley Steemer and Mr. Fleetwood had numerous discussions concerning Mr. Fleetwood's plans for becoming current on his past-due obligations to Stanley Steemer and payments going forward. Stanley Steemer determined that Mr. Fleetwood would be unable to satisfy his past-due obligations and to keep current on ongoing obligations as they came due.  As a result, Stanley Steemer decided to end its relationship with Mr. Fleetwood.

On October 24, 2008, Stanley Steemer issued a Notice of Termination to Mr. Fleetwood pursuant to its rights under the Franchise Termination Agreement.  On October 30, 2008, Mr. Fleetwood, through counsel, objected to the Notice of Termination, claiming that he had not been provided an adequate opportunity to cure his defaults under the Franchise Termination Agreement. Stanley Steemer disagreed that its October 24, 2008 letter

_____

[5]Subsequent to the execution of Lease #2966.01, Huntington assigned its rights under Lease #2966.01 and Stanley Steemer's guaranty to Wells Fargo Equipment Finance ("Wells Fargo"). Huntington retained its right to receive lease payments under Lease #2966.02.

ORDER - 11

violated Washington Franchise Protection Act ("FIPA") in any way.   To avoid a dispute on the issue, Stanley Steemer formally rescinded the Notice of Termination and issued a Notice to Cure on October 31, 2008, providing Mr. Fleetwood an additional thirty days to cure his various defaults under the Franchise Termination Agreement.

On November 26, 2008 — just four days before the expiration of the thirty-day cure period — Mr. Fleetwood filed for bankruptcy protection under Chapter 11 of the United States Bankruptcy Code, Case No. 08-04986-PCW11, United States Bankruptcy Court, Eastern District of Washington. Because of the automatic stay imposed by the bankruptcy filing, Mr. Fleetwood continued to operate the franchise business using Stanley Steemer's name, trademarks, and proprietary system while the bankruptcy case was pending, but he failed to remain current on his royalty and other payment obligations.   On August 24, 2009, Mr. Fleetwood dismissed the bankruptcy case, terminating the effect of the automatic stay.   Mr. Fleetwood has expressly admitted that he was unable to cure during this time. Mr. Fleetwood has never cured his defaults.

On August 28, 2009, Stanley Steemer sent a letter to Mr. Fleetwood, in care of his attorney, confirming the termination of his right to continue operating the franchise.   Mr. Fleetwood ceased operating the Stanley Steemer franchise as of August 31, 2009.   Notwithstanding the provision of the Franchise Agreement concerning competition, Mr. Fleetwood continues to operate a competing carpet-and-upholstery cleaning business, called Tedy Fresh.   Through April 3, 2010, Tedy Fresh appears

to have generated gross receipts of $204,927.43. Mr. Fleetwood paid $2,337.59 in royalties[6] shortly before the hearing scheduled on Stanley Steemer's motion for preliminary injunction, which was based, in part, on his failure to pay post-termination royalties. After the preliminary injunction motion was resolved, Mr. Fleetwood did not pay any further post-termination royalties.

The Fleetwood Plaintiffs have defaulted on their obligations to make payments under Lease #2966.01 and Lease #2966.02 for the vans. As a result of the defaults, both Huntington and Wells Fargo notified Wolverine of default. They subsequently demanded payment from Stanley Steemer under Stanley Steemer's guaranty of the lease obligations. In response, Stanley Steemer paid to Wells Fargo the sum of $76,947.96 under Lease #2966.01 and to Huntington the sum of $61,336.81 under Lease #2966.02. As of April 30, 2010, Stanley Steemer indicates Wolverine, Inc. owes $138,284.77 for reimbursement of amounts paid by Stanley Steemer under the vehicle lease guarantees.

Stanley Steemer indicates that as of April 30, 2010, Mr. Fleetwood owed to Stanley Steemer, the following amounts totaling $606,348.82 plus interest:

> (a) Under the May 2005 note, $356,371.91 in principal and interest;
> (b) Under the Franchise Agreement and Franchise Termination Agreement (covering amounts arising on and after May 2005):

---

[6] Article XV ¶ B of the Franchise Agreement deals with "Competition After Termination." If Franchise Owner competes within a two-year period after termination, he/she must pay Stanley Steemer a monthly royalty payment equal to 7% of the gross receipts received by Franchise Owner.

ORDER - 13

$100,581.78 for past-due royalty payments, $45,098.28 for advertising and marketing fees, $10,886.45 for local telephone fees, $1,225.83 for parts and miscellaneous invoices, and $11,034.86 for service charges, for a total exceeding $168,827.20, plus interest;
© For reimbursement of one-half of the amounts paid by Stanley Steemer under the vehicle lease guarantees, the amount of $69,142.39;
(d) For violations of the noncompete provision, $12,007.32, plus 7% of all sales from all carpet-and-upholstery cleaning performed by any business owned or operated by Mr. Fleetwood from January 2010 through August 29, 2011;
(e) Plus interest at the default rate of 18% per annum as provided in the Franchise Agreement.

## II.  SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *See Roberts v. Continental Insurance, Co.*, 770 F.2d 853, 855 (9th Cir.1985). Summary judgment should be granted if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Triangle Mining Co., Inc. v. Stauffer Chemical Co.*, 753 F.2d 734, 738 (9th Cir.1985).

## III. ANALYSIS OF SUMMARY JUDGMENT MOTIONS

### A.  Plaintiffs Rozmus's Motion for Partial Summary Judgment

The narrow issue before the court on Plaintiffs' motion for partial summary judgment is whether Stanley Steemer has violated Washington's Franchise Investment Protection Act, or FIPA, through its termination of Mr. Rozmus's franchise in 2008.  Rozmus Plaintiffs argue that the franchise termination agreement, while it terminated the earlier franchise agreement, is actually a new franchise agreement by its terms

and therefore the notice of default and opportunity to cure had to be given again.

Defendant Stanley Steemer argues that it complied with FIPA. The Franchise Agreement was entered into between Mr. Rozmus and Stanley Steemer on August 1, 2003. On February 2, 2007, Stanley Steemer gave Mr. Rozmus a notice of default in writing, explaining the sums which were in default and that he was entitled to a 30-day cure period, all in compliance with FIPA. After defaulting on his obligations, Mr. Rozmus had three options: (1) he could cure his default; (2) he could not cure his default and allow his franchise to terminate; or (3) he could ask for more time to cure his default. Mr. Rozmus chose to ask for more time. In February 2007, he voluntarily signed the Franchise Termination Agreement which had been mailed to him. There is no evidence in the record that he sought legal advice or advice from a third party financial advisor. The Franchise Termination Agreement was a forbearance agreement that allowed Mr. Rozmus additional time to cure his defaults. It set forth the payment obligations he was agreeing to effectuate a cure of his defaults.

The Court finds that Mr. Rozmus's franchise was terminated after Stanley Steemer had both provided thirty days notice of default and an opportunity to cure, and after an extended period to cure. Mr. Rozmus was clearly in default of his obligations under the Franchise Termination Agreement and Mr. Rozmus was well aware of his default. The Franchise Termination Agreement was terminated in writing on April 25, 2008. Mr.

ORDER - 15

Rozmus continued to operate the business for thirty-eight days following the April 25, 2008 letter, until approximately June 2, 2008, and did not cure his default during that period.  Stanley Steemer did not terminate Mr. Rozmus's franchise rights improperly or without proper notice pursuant to FIPA.

The Franchise Termination Agreement provided a procedure by which Mr. Rozmus could continue operating the carpet cleaning business while allowing him additional time to cure his defaults.  Most importantly, the agreement expressly confirmed the termination of the Franchise Agreement. In this regard, the Franchise Termination Agreement stated:

> The parties desire to acknowledge and confirm the termination of the Franchise Agreement, but to provide a procedure by which Franchise Owner may continue to operate a Stanley Steemer carpet cleaning business in the Franchise Area and obtain the option to enter a new Franchise agreement for the Franchise Area by complying with all terms hereof.

The Franchise Termination Agreement did not indicate or imply that it was a new Franchise Agreement, as Plaintiffs assert.  In fact, Paragraph 5 of the Franchise Termination Agreement provided that, if Mr. Rozmus had paid in full the promissory note discussed and was otherwise in full compliance with the terms of the agreement, he would be allowed to enter into a new Franchise Agreement with Stanley Steemer for the same territory and under the same terms and conditions of his original Franchise Agreement.  Paragraph 5 reads, in pertinent part:

> 5.  Upon payment in full of the Note and provided that Franchise Owner is then in full compliance with

ORDER - 16

> all terms of this Agreement, SSI shall then grant
> Franchise Owner a one-time option to enter into a
> new Franchise Agreement with SSI for the Franchise
> Area upon the identical terms and conditions of the
> Franchise Agreement.   . . .

It is undisputed that Mr. Rozmus (and Mr. Fleetwood)[7] never complied with the terms of their respective Franchise Termination Agreements.  For the foregoing reasons, the Court concludes that Plaintiffs' Motion for Partial Summary Judgment should be denied.

### B.    Defendant's Motion for Summary Judgment Regarding Rozmus

Defendant explains that on August 1, 2003, Mr. Rozmus and Stanley Steemer entered the Franchise Agreement, a fully integrated contract, that governed the relationship between the parties.  This agreement required Mr. Rozmus to, among other things, pay a monthly royalty payment for his use of the Stanley Steemer name, trademarks, goodwill, and proprietary cleaning system.  Mr. Rozmus was also required to pay a National Advertising fee.  Failure to pay these obligations, or to pay debts owed to third parties, was designated a material breach, allowing Stanley Steemer to terminate the franchise.  By February 2, 2007, Mr. Rozmus was in default, owed Stanley Steemer $62,915.79, and thus had materially breached the Franchise Agreement. Accordingly, on February 2, 2007, and pursuant to FIPA, Stanley Steemer sent Mr. Rozmus a letter stating that Mr. Rozmus was in material default and that he "now [had] thirty (30) days from the date of [his] receipt of this letter in which

---

[7]Mr. Fleetwood's Franchise Termination Agreement was identical in the provisions at issue.

to bring all of [his] past due obligations current." If he was unable to cure his default within that time, the letter stated, Stanley Steemer would "have no alternative but to proceed to terminate [his] Franchise Agreement in accordance with the appropriate provisions thereof."

Before the franchise automatically terminated at the end of the cure period, Mr. Rozmus told Stanley Steemer that he would not be able to cure within that period and asked Stanley Steemer for more time to cure. On February 26, 2007, Stanley Steemer mailed Mr. Rozmus a forbearance agreement, entitled Franchise Termination Agreement, which set forth the terms and conditions under which Stanley Steemer would forbear from exercising its right to terminate Mr. Rozmus's franchise and would allow him additional time to cure his defaults. The Franchise Termination Agreement executed by the parties explicitly recognized that Mr. Rozmus "ha[d] defaulted in [his] payment obligations to SSI under the Franchise Agreement" and "owe[d] SSI the sum of $67,025.13 (the 'Delinquent Balance')."

Pursuant to the Franchise Termination Agreement, Stanley Steemer gave Mr. Rozmus additional time to cure.  Mr. Rozmus was to execute a promissory note securing his then-due obligation to Stanley Steemer and to stay current with future obligations. Finally, the Franchise Termination Agreement provided that, if Mr. Rozmus defaulted under that agreement, Stanley Steemer could immediately terminate that agreement. The Franchise Termination Agreement also contained an integration clause.

Mr. Rozmus breached the agreement. He was told of the default, and

was then informed of that default in writing by a letter dated April 25, 2008. He failed to stay current on his royalty and promissory note payments, and on other payments due to third party creditors. Following the notice terminating the agreement, Stanley Steemer and Mr. Rozmus entered into another agreement in which they agreed that, in exchange for Stanley Steemer forgiving the unpaid bills Mr. Rozmus owed to it ($102,273.84) and paying his debts to third-party creditors ($213,726.16), Mr. Rozmus would continue to operate the business and cooperate in transitioning the franchise area to a new owner. Stanley Steemer performed under this agreement (paying and/or absorbing costs and creditor bills attributable to Mr. Rozmus) in excess of $316,000, and Mr. Rozmus operated the business until approximately June 2, 2008, when a new franchisee took over the franchise area. Although not a necessary determination for purposes of this order, the latter agreement appears to have been motivated, in part, by concerns that both parties had related to the continued service of current customers.

Defendant argues that despite the existence of a fully integrated (termination) contract setting forth the rights and responsibilities of the parties and performance by both parties thereto, Mr. Rozmus filed a seven-count complaint seeking alleged damages for breach of fiduciary duty, unjust enrichment, failure of consideration, breach of contract/breach of the implied covenant of good faith and fair dealing, equitable estoppel, and for alleged violations of Washington's Franchise Investment Protection Act and Consumer Protection Act. Defendant Stanley

Steemer asserts it is entitled to summary judgment on each of these claims.

Defendant asserts that if the parties' agreement in 2008 is not enforced (in which Mr. Rozmus agreed to participate and assist in the transition of the franchise to a new franchisee in return for Stanley Steemer's promise to forgive and pay off debts totaling $316,000) then Stanley Steemer is entitled to repayment of the debts it forgave based on an unjust enrichment theory.

Alternatively, Defendant argues it is entitled to judgment on the promissory note on which Mr. Rozmus defaulted in the amount of $69,677.15 plus interest from April 30, 2010; judgment for past due obligations owed by Mr. Rozmus for his defaults under both the Franchise Agreement and the Termination Agreement in the amount of $64,254.71 plus interest from April 30, 2010; and judgment for unjust enrichment in the amount of $213,726.16.

The Court will address each claim, noting that it has determined above that the termination of Plaintiff Rozmus was not a violation of FIPA with respect to notice and opportunity to cure.

### 1.    Breach of Fiduciary Duty

Plaintiffs claim that Stanley Steemer breached fiduciary duties allegedly owed to them by "[e]ncouraging and soliciting Fleetwood and Rozmus to incur substantial debt to [Stanley Steemer] in order to permit them to purchase . . . franchise rights, and operating Stanley Steemer franchise businesses, with the knowledge the franchisees were

ORDER - 20

undercapitalized and likely to fail over time." (1st Am. Compl. ¶ 1.3.1.) As a result, Plaintiffs claim that Stanley Steemer "knew or should have known that [Fleetwood and] Rozmus eventually would reach the point where [Fleetwood's and] Rozmus' debt obligation to [Stanley Steemer] would overwhelm the business and cause it to fail." (Id. ¶¶ 4.16, 5.21.)

Defendant contends that the Franchise Agreement clearly states that there is no fiduciary relationship between the parties and that these franchise owners are independent businessmen. In light of that express and enforceable provision, Defendant argues that Plaintiffs' breach of fiduciary claim should be denied.

Plaintiffs, on the other hand, ask this Court to find that, despite the express disclaimer language in the franchise agreement, a fiduciary duty existed on the part of the franchisor towards its franchisees, requiring the franchisor to act in the best interest of the franchisee. Plaintiffs urge that inherent in a franchise relationship is a fiduciary duty.  Specifically, Mr. Rozmus argues that Defendant Stanley Steemer breached a fiduciary duty to him by allowing him to purchase and operate a franchise business while allegedly undercapitalized and by terminating his franchise rights following his defaults.  Finally, Mr. Rozmus argues that he had reason to place particular confidence and trust in the franchisor Stanley Steemer.

The Court concludes that, as a matter of law, no breach of fiduciary duty occurred under the specific facts of this case.  The court reaches its conclusion based in significant part on the fully <u>integrated</u> contract

(Franchise Agreement) that Mr. Rozmus freely entered into with Stanley Steemer.  The Franchise Agreement contained the following provision:

> Article XVII ¶ E:
>
> Entire Agreement. This agreement contains the entire agreement of the parties and no representation, inducements, promises, or agreement, oral or written, not included in this agreement shall be of any force and effect.

In addition to the integration clause, the Franchise Agreement expressly provided that any change or modification had to be in writing:

> Article XVII ¶ B:
>
> Amendment. No change or modification in this Agreement shall be valid unless the same be in writing signed by the parties.

Furthermore, most courts have rejected the theory that a franchise relationship creates a fiduciary obligation in any traditional sense.[8]  This Court, however, recognizes that a fiduciary duty nevertheless might be found to exist where the dealings between a franchisor and its franchisee suggest that the franchisee had reason to place particular confidence and trust in the franchisor.

For example, the Fifth Circuit Court of Appeals in *Carter Equipment Co. v. John Deere Industrial Equipment Co.*[9]  acknowledged that

---

[8]Lee A. Rau, *Implied Obligations in Franchising: Beyond Terminations,* 47 Bus. Law. 1053, 1061-62, n.49 (1992) (listing cases); *Corp v. Atlantic Richfield Co.*, 122 Wash.2d 574, 586-87 (1993)(citing Rau, *supra*, at 1075(recognizing that a franchise relationship is a business rather than a fiduciary relationship).

[9]681 F.2d 386 (5th Cir.1982).

ORDER - 22

"[o]rdinarily, courts do not impose fiduciary duties upon parties to contractual agreements," but held that, under Mississippi law, "[a] fiduciary relationship may arise if the appropriate facts are present."[10] The court ruled that the existence of such a relationship was a jury question and required proof that the parties were engaged in activity "for the benefit of both," and had reposed "express trust or confidence in one another."[11]   The court also suggested, however, that such a relationship could be disclaimed, or at least limited, by the express terms of the franchise agreement.[12] It stated that such an agreement may define the "individualized interests" of the parties and observed the following:

> If the parties, in seeking their individualized interests, comply with the terms of a contract in which they are also parties, it would be difficult to find a breach of a fiduciary duty. Although fiduciaries have mutual interests, they also have individual goals. If part of their relationship is set out in a contract, the parties have affirmatively recognized, in part, those individual interests. Unless the contractual terms are unconscionable, illegal, or violative of public policy, fiduciaries, as a practical matter, acknowledge that activity in conformance with the terms of the contract cannot amount to misconduct that constitutes a breach of a fiduciary duty.

*Carter Equip. Co.*, 681 F.2d at 392 n.14.

The Court notes the Franchise Agreement contained the following

---

[10] *Id.* at 390.

[11] *Id.* at 391.

[12] *Id.* at 392.

ORDER - 23

provision:

> Article X ¶ A:
>
> Independent Contractor. Franchise Owner is an independent contractor and is not an agent, partner, joint venturer or employee of Stanley Steemer, and **no fiduciary relationship between the parties exists**. Franchise Owner shall have no right to bind or obligate Stanley Steemer in any way nor shall any representation be made that Franchise Owner has any right to do so. Stanley Steemer shall have no control over the terms and conditions of employment of Franchise Owner's employees. [Emphasis added.]

This Court does not find the contractual terms of the parties' Franchise Agreement unconscionable, illegal, or violative of public policy.   Moreover, the Court has no authority to override express provisions of a franchise agreement unless a franchisee can demonstrate that the provisions were unconscionable at the time the agreement was made.   Mr. Rozmus has not demonstrated such.   For these reasons, Plaintiff Rozmus's breach of fiduciary duty claim is denied and summary judgment on this claim is granted in favor of Defendant.

### 2.   Unjust Enrichment

Mr. Rozmus claims that Stanley Steemer was unjustly enriched by acquiring his franchise, including goodwill, without fair compensation. (Am. Compl. ¶ 6.1.4.) Defendant asserts that this claim must fail because no unjust enrichment claim exists when the parties have entered into an express contract. Such claim is even less viable when a party is attempting to contravene the express terms of a contract.

Unjust enrichment exists if one party is enriched at another's expense. The elements of an unjust enrichment claim are: (1) one party

must have conferred a benefit to the other; (2) the party receiving the benefit must have knowledge of that benefit; and (3) the party receiving the benefit must accept or retain the benefit under circumstances that make it inequitable for the receiving party to retain the benefit without paying its value. *Cox v. O'Brien*, 150 Wash. App. 24, 37 (2009).

In the instant matter, the Franchise Agreement and Franchise Termination Agreement govern the franchise relationship between Stanley Steemer and Mr. Rozmus. The Court finds these agreements preclude Mr. Rozmus's unjust enrichment claim. Specifically, those contracts govern the rights and obligations of the parties upon termination. The Franchise Agreement expressly provides:

> Article V ¶ F:
>
> Goodwill. Franchise Owner acknowledges and expressly agrees that any and all goodwill associated with the Stanley Steemer System and identified by the Stanley Steemer Trademarks shall inure directly and exclusively to the benefit of Stanley Steemer and is the property of Stanley Steemer, and that upon the expiration or termination for whatever reason of this agreement, no monetary amount shall be assigned as attributable to any goodwill associated with any of Franchise Owner's activities in the operation of the license granted herein, or Franchise Owner's use of the Stanley Steemer System or the Stanley Steemer Trademarks.

The Court also notes that at the time of final termination, Mr. Rozmus owed Stanley Steemer and other creditors significant sums (approximately $316,000), which Stanley Steemer either forgave or paid on his behalf. If the May 2, 2008 agreement between the parties was to be found unenforceable (this Court does not so find), that consideration

ORDER – 25

would need to be taken into account pursuant to a reverse unjust enrichment theory.

It follows that because Stanley Steemer exercised rights expressly granted by contract, and because the contract specifically provided that Stanley Steemer owned all associated goodwill, which is not unusual in a franchise arrangement, Mr. Rozmus's unjust enrichment claim is without merit. Moreover, there is no evidence before this Court of actual unjust enrichment received by Stanley Steemer.

### 3.    Failure of Consideration

Although not entirely clear, Mr. Rozmus seeks a declaration that the Franchise Agreement, Termination Agreement, and related promissory notes are unenforceable because there was a failure of consideration with respect to any obligations that he would have to Stanley Steemer.

Defendant asserts that Stanley Steemer provided the significant, material, and valuable consideration due to Mr. Rozmus under the Franchise Agreement and the Franchise Termination Agreement. More specifically, Defendant explains that Mr. Rozmus was granted the necessary licenses under the Franchise Agreement and there is no dispute that Mr. Rozmus used Stanley Steemer's name, trademarks, goodwill, and proprietary system from 2003 through June 2, 2008.

Under Washington case law, failure of consideration occurs only when a party fails to transfer "a significant, material and valuable portion of the consideration to be transferred." *Krause v. Mariotto*, 66 Wash.2d 919, 920 (1965). This Court is hard-pressed to find what portion of

ORDER - 26

consideration Defendant Stanley Steemer failed to transfer with respect to Mr. Rozmus. According, Plaintiffs' failure of consideration claim is denied.

### 4. Breach of Contract/Breach of the Implied Covenant of Good Faith and Fair Dealing

As to the alleged contractual breach, Mr. Rozmus's complaint alleges that Stanley Steemer breached its obligation to deal with Mr. Rozmus in good faith by failing to process the Yakima area franchise right transfer application on a timely basis. (Am. Compl. ¶ 5.27.)

Defendant argues that the Franchise Agreement and Franchise Termination Agreement expressly prohibit Mr. Rozmus from selling his franchise rights if he was in default. It is undisputed that Mr. Rozmus was in default under the Franchise Agreement and Franchise Termination Agreement at the time of this alleged application. Defendant explains that because Mr. Rozmus did not satisfy his financial obligations under the contracts, he was contractually prohibited from selling his franchise rights. Defendant concludes there is no factual or legal support for the claim that Stanley Steemer breached any contractual obligations. Stanley Steemer has performed all of its obligations under the contracts.

The Court has found, that Stanley Steemer properly exercised its contractual right to terminate Mr. Rozmus's franchise rights. Plaintiffs have not shown that Defendant arguably breached its contractual obligations under the facts of this case. As for the alleged breach of the implied covenant of good faith and fair dealing portion of this claim, the Plaintiffs appear to be arguing the common law principle,

inasmuch as the duty of "good faith and fair dealing" is inherent in every business relationship.

The covenant of good faith and fair dealing is applied in franchising as a litigation tool because of the doctrine's malleable nature and uncertainties inherent in franchise relationships.[13]   The covenant is also applied to both parties to a franchise agreement.   The courts recognize that the good faith obligation is most often applied to the party assuming discretionary control in the agreement. *Id*.   In this case, Stanley Steemer terminated Plaintiffs for good cause, and specifically for defaulting on their obligations.   Under FIPA, the franchisor needs "good cause" to terminate the franchise.   "Good cause" is often defined to be the failure of the franchisee to comply with a lawful provision of the franchise agreement after being given the opportunity to cure that failure. RCW 19.100.180(2)(j).

Additionally, Defendant Stanley Steemer's failure to process the Yakima area franchise right transfer application was based on Plaintiffs' default.   The Franchise Agreement and Franchise Termination Agreement expressly prohibited Mr. Rozmus from selling his franchise rights if he was in default. The applicable provision of the Franchise Agreement reads:

/ / /

---

[13]W. Michael Garner, *The Implied Covenant of Good Faith in Franchising: A Model for Discretion*, 20 Okla. City U. L. Rev. 305, 306 (1995).

ORDER – 28

> Article XII ¶ A:
>
> Assignment Conditions. Franchise Owner's interest in, and obligations under, this Agreement may be assigned, transferred, pledged, mortgaged, hypothecated, or in any manner encumbered only if . . . Franchise Owner has paid all obligations due to Stanley Steemer and any other creditor arising from the activities permitted under this Agreement.

The implied obligation of good faith and fair dealing is designed to protect the reasonable expectations of the parties to a contract. The Court is reluctant to use the covenant as a basis for redefining the parties' relationship or for imposing unanticipated burdens or limitations on one of the parties.  At the outset of a franchise relationship there is undoubtedly an expectation on the part of all concerned that the system will grow and prosper.  Reasonable expectations obviously cannot be judged solely on the basis of the gains anticipated by the contracting parties. The downside also must be recognized, as must the need of franchisors to innovate and respond to general market conditions. Moreover, parties to a contract may have different expectations, further complicating a court's task in finding implied obligations to exercise discretion and judgment in a particular manner. As such, courts have tended to imply contract obligations only in very limited circumstances.[14]

The argument advanced by Plaintiffs is to the effect that Stanley Steemer encouraged Plaintiffs to incur greater debt to "grow the

---

[14]*See, e.g.*, *Triangle Mining Co. v. Stauffer Chem. Co.*, 753 F.2d 734, 739 (9th Cir1985).

ORDER – 29

business" volume while not being overly concerned about the load of debt being incurred[15].    Noting that Plaintiffs had substantial business experience with Stanley Steemer and that the statements being alleged are vague, devoid of factual specificity and in the nature of readily recognizable opinions expressed as a hope for the future, the Court finds no material questions of fact related to their representations, if they occurred, remain for resolution.

The Court declines to find that Defendant breached the implied covenant of good faith and fair dealing concerning Mr. Rozmus.    This claim is therefore denied and summary judgment granted in Defendant's favor.

### 5.    Equitable Estoppel

Mr. Rozmus claims that the defense of equitable estoppel acts to prevent Stanley Steemer's termination of his franchise rights.    Defendant argues that the contracts explicitly stated in plain language that his franchise rights would be terminated if he failed to pay his obligations. Mr. Rozmus failed to pay, and Stanley Steemer asserted its rights under the contracts.

As a matter of law the Court found above that the termination was not in violation of FIPA and that Defendant asserted its rights under the express language of the contracts.    In light of the integrated contracts, no oral statement can properly change their unambiguous terms.    Nor can

---

[15]The Court notes that on at least one occasion, Mr. Fleetwood requested additional credit from Stanley Steemer during his time of default.

ORDER - 30

Mr. Rozmus properly claim that providing him with an additional chance to fulfill his promise to cure meant that Stanley Steemer waived its right to terminate him.  This is so because the Franchise Agreement specifically provides that "[t]he failure of Stanley Steemer to terminate this Agreement after any default hereunder . . . shall not waive Stanley Steemer's right to terminate the Agreement in the event of the continuation of such default or the occurrence of any new event of default."

The elements of equitable estoppel are: (1) a prior admission, statement, or act that is inconsistent with a later claim by Stanley Steemer; (2) Plaintiffs' action in reliance on that previous act, statement, or admission; and (3) injury resulting from allowing Defendant to contradict or repudiate the prior act, statement, or admission. *City of Seattle v. St. John*, 166 Wash.2d 941, 948 (2009).  Equitable estoppel is not favored, and the party asserting estoppel must prove each of the elements by clear, cogent, and convincing evidence." *Peterson v. Groves*, 111 Wash.App. 306, 310 (2002).  Because Mr. Rozmus cannot establish that Stanley Steemer took any act or made any statement or admission inconsistent with its later termination of his franchise rights, Mr. Rozmus's equitable estoppel claim fails.  Summary judgment is granted in favor of Defendant.

### 6.    Washington FIPA Violations

Mr. Rozmus's first contention that FIPA was violated regarding lack of notice and opportunity to cure has been analyzed above, in which the

Court found no violation.  The second allegation of a FIPA violation concerns the good faith provision of 19.100.180(1) of FIPA.  This provisions reads:  "The parties shall deal with each other in good faith."  Section (1), however, does not override express terms of a written contract:  "While the scope of the contractual duty of good faith may have been unclear when FIPA was enacted, Washington courts have since recognized that the duty of good faith does not operate to create rights not contracted for, nor does it override the express terms of a contract."  *Doyle v. Nutrilawn U.S., Inc.,* 2010 WL 1980280, at *8 (W.D.Wash. May 17, 2010)(citations omitted).

Plaintiffs have presented no evidence to demonstrate that Stanley Steemer violated its good faith obligations.  The Plaintiffs argue predominantly that between Mr. Fleetwood and Mr. Bates (the CEO whom Mr. Fleetwood considered to be a friend), the latter made repeated assurances that he would protect Mr. Fleetwood's franchise from termination, that he was the only person at Stanley Steemer with the power to terminate, and that Stanley Steemer would make his franchise work.  In the opposition brief to Defendant's summary judgment motion regarding Rozmus Plaintiffs, Mr. Rozmus argues that he too trusted and relied on Stanley Steemer's assurances that it would "make it work" and everything would be "ok."  Ct. Rec. 119, at 34.

The Court finds that these statements are akin to supportive commentary and opinion rather than words rising to the level of extra-contractual promises.  The evidence indicates that Plaintiff Rozmus (and

ORDER - 32

Plaintiff Fleetwood) were independent businessmen with years of experience with the Stanley Steemer system and franchise operation. Having found no breach of the implied covenant of good faith and fair dealing, this Court finds that this claim must be denied also and summary judgment granted in favor of Defendant.

### 7. Washington CPA Violation

Mr. Rozmus's claim under Washington's Consumer Protection Act ("CPA")is premised primarily on the alleged FIPA violations. However, FIPA was not violated. Further, Plaintiffs cannot meet the elements for a private right of action under the CPA. The elements are "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 780 (1986).

Plaintiffs have not shown any direct "unfair or deceptive act or practice" arising from the alleged FIPA violation. Further, under the "public interest" prong, parties with "a history of business experience" cannot claim a CPA violation because they are "not representative of bargainers [who are] subject to exploitation and unable to protect themselves." *Hangman*, 105 Wash.2d at 794.

Finally, as discussed above in connection with Mr. Rozmus's FIPA claim, Mr. Rozmus cannot show he was prejudiced or damaged in any way. Therefore, he cannot establish the final two elements of his CPA claim: damages and causation.

"If any element is not satisfied, there can be no successful CPA claim." *Robinson v. Avis Rent A Car Sys., Inc.*, 106 Wash.App. 104, 114 (2001).  For these reasons, Mr. Rozmus's CPA claim fails.

**C.    Defendant's Motion for Summary Judgment Regarding Fleetwood**

The Complaint alleges damages for breach of fiduciary duty, unjust enrichment, failure of consideration, breach of contract/breach of the implied covenant of good faith and fair dealing, equitable estoppel, and violations of Washington's Franchise Investment Protection Act and Consumer Protection Act.  Defendant Stanley Steemer asserts it is entitled to summary judgment on each of these claims.

Additionally, Defendant argues that Mr. Fleetwood continues to perform carpet-and-upholstery cleaning services in a new business called Tedy Fresh, which is directly in violation of the noncompete provision contained in the Franchise Agreement. That provision provides that once the franchise relationship is terminated, Mr. Fleetwood may not perform any carpet-and-upholstery cleaning services within the franchise territory for two years unless he remits to Stanley Steemer payment equal to 7% of his gross sales. It is undisputed that Mr. Fleetwood had gross sales of $204,929.43 from September through April 3, 2010, which would entitle Stanley Steemer to $14,344.92 in royalties, of which Mr. Fleetwood has paid only $2,337.59, just prior to the preliminary injunction hearing that was resolved early in this case. Defendant asserts Mr. Fleetwood owes $12,007.33 plus 7% of all revenue generated by any competing business from April 3, 2010 through August 28, 2011.

ORDER - 34

Additionally, Defendant argues that Stanley Steemer guaranteed certain vehicle leases entered into by Wolverine, Inc., in 2005. Wolverine defaulted on the leases, Mr. Fleetwood failed to pay his guaranty, and, as a result, Stanley Steemer was required to pay $138,284.77 as a co-guarantor.[16]  Defendant is requesting reimbursement of amounts paid by Stanley Steemer under the vehicle lease guarantees, in the amount of $69,142.39 from Mr. Fleetwood.

Defendant further argues that under the parties' Franchise Agreement and Franchise Termination Agreement (covering amounts arising on and after May 2005), Mr. Fleetwood owes $100,581.78 for past-due royalty payments; $45,098.28 for advertising and marketing fees; $10,886.45 for local telephone fees; $1,225.83 for parts and miscellaneous invoices; and $11,034.86 for service charges, for a total exceeding $168,827.20, plus interest.

Finally, Defendant seeks judgment for the delinquent amount under the May 2005 note for $356,371.91 in principal and interest.

These undisputed facts, Defendant argues, establish that Stanley Steemer is entitled to judgment as a matter of law under Plaintiff Fleetwood's claims against it and that it is entitled to judgment against Fleetwood for the outstanding amounts owed to it for a total judgment of $606,348.83, plus interest and damages that continue to accrue.  As against Plaintiff Wolverine, Inc., Defendant is requesting judgment in

---

[16]Mr. Fleetwood sets forth a couple of theories, however, as to why he shouldn't have to reimburse Defendant for the amounts paid under the vehicle lease guarantees.

ORDER - 35

the amount of $138,248.77, for reimbursement of amounts paid by Stanley Steemer under the vehicle lease guarantees.

### 1.    Breach of Fiduciary Duty

Plaintiffs Fleetwood and Rozmus collectively argue identical claims with slight variances in the facts.  The Court will incorporate its findings from Mr. Rozmus's identical claims and indicate where any differences lie with respect to Mr. Fleetwood.

The tenet of Mr. Fleetwood's argument with respect to fiduciary duty breach is identical to Mr. Rozmus's argument.  Mr. Fleetwood also cites one other factor that Mr. Rozmus does not, and that is, he alleges a close personal relationship with Mr. Bates, the CEO of Stanley Steemer and that he relied on Mr. Bates's advice to grow rapidly, purchase expensive advertising, spend money on additional vans, and increase his credit line. Mr. Fleetwood argues that Mr. Bates in essence assured him that he would not be terminated.

Defendant submits that *Burger King v. Austin*[17] is instructive, finding that a franchise relationship is not a fiduciary relationship and that the express language in a franchise agreement, stating that there was no fiduciary relationship, is controlling.

This Court finds Defendant's argument convincing for the reasons set forth above in the motion for summary judgment against Plaintiff Rozmus.

---

[17]805 F. Supp. 1007, 1019-20 (S.D. Fla. 1992) (concluding that such provisions weigh against a finding of a fiduciary relationship); *Allen v. Hub Cap Heaven, Inc.*, 484 S.E.2d 259,264 (Ga. Ct. App. 1997) (same). Given the dearth of Washington case law regarding franchise termination and similar issues, the Court looks to cases from various districts.

Although the advice that Mr. Fleetwood received from Mr. Bates did not achieve the results anticipated by Mr. Fleetwood, there are no material facts in dispute that justify this claim going forward. For these reasons, Plaintiff Fleetwood's breach of fiduciary duty claim is denied and summary judgment is granted in favor of Defendant.

**2.   Unjust Enrichment**

The Court finds that the argument of Plaintiff Fleetwood is similar to Plaintiff Rozmus's and concludes Mr. Fleetwood's unjust enrichment claim is without merit.   Summary judgment is granted in favor of Defendant.

**3.   Failure of Consideration**

The Court finds that the argument of Plaintiff Fleetwood is similar to Plaintiff Rozmus's and concludes Mr. Fleetwood's failure of consideration claim is without merit.   Summary judgment is granted in favor of Defendant.

**4.   Breach of Contract/Breach of the Implied Covenant of Good Faith and Fair Dealing**

The Court finds that the argument of Plaintiff Fleetwood is similar to Plaintiff Rozmus's and concludes Mr. Fleetwood's breach of contract and breach of the implied covenant of good faith and fair dealing is without merit.   Summary judgment is granted in favor of Defendant.

**5.   Equitable Estoppel**

The Court finds that the argument of Plaintiff Fleetwood is similar to Plaintiff Rozmus's and concludes Mr. Fleetwood's equitable estoppel claim is without merit.   Summary judgment is granted in favor of

Defendant.

### 6.  Washington FIPA Violations

As to Mr. Fleetwood, the Court finds no violation of FIPA with regard to notice of default and opportunity to cure.  Mr. Fleetwood received a second 30-day notice in 2008.  As to the alleged good faith provision violation, the Court similarly finds Plaintiff Fleetwood has presented no evidence to demonstrate that Stanley Steemer violated its good faith obligations. Having found no breach of the implied covenant of good faith and fair dealing either, this Court finds that this claim must be denied and summary judgment granted in favor of Defendant.

### 7.  Washington CPA Violation

The argument of Plaintiff Fleetwood is similar to Plaintiff Rozmus's and concludes Mr. Fleetwood's Consumer Protection Act violation is without merit.  Summary judgment is granted in favor of Defendant.

**IT IS HEREBY ORDERED:**

1. Plaintiffs Lucinda and Rex Rozmus's Motion  for Partial Summary Judgment, **Ct. Rec. 79**, is respectfully **DENIED.**

2. Defendant Stanley Steemer International's Motion for Summary Judgment Regarding Rex and Lucinda Rozmus, **Ct. Rec. 94**, is **GRANTED, in part** and **RESERVED, in part.** In light of the ruling granting summary judgment in favor of Defendant, and having found the 2008 agreement was fully performed and enforceable, the parties shall provide supplemental briefing as to whether any amounts are due and owing from the Rozmus Plaintiffs and if so, the means by which amounts should be calculated.

ORDER - 38

Supplemental briefing is due from Plaintiffs Rozmus and Defendant Stanley Steemer on or before **July 15, 2010** and shall not exceed **ten (10) pages.**

3. Defendant Stanley Steemer International's Motion for Summary Judgment Regarding Fleetwood Plaintiffs, **Ct. Rec. 99,** is **GRANTED, in part,** and **RESERVED, in part.** In light of the ruling granting summary judgment in favor of Defendant, the parties shall provide supplemental briefing as to whether any amounts are due and owing in the final judgment from the Fleetwood Plaintiffs and from Plaintiff Wolverine, Inc., and if so, the means by which amounts should be calculated. Additionally, the parties shall brief the issue of whether the partial royalty payment of $2,337.59 made by Fleetwood Plaintiffs prior to the canceled preliminary injunction hearing essentially legitimized the non-compete clause in the parties agreement. Supplemental briefing from Fleetwood Plaintiffs and the Defendant is due on or before **July 15, 2010** and shall not exceed **ten (10) pages.**

4. The trial date set for July 26, 2010 and the pretrial teleconference set for July 13, 2010 are **VACATED.** If a hearing on matters which remain is needed, a new hearing date will be established hereafter.

The District Court Executive is directed to file this Order and provide copies to counsel.

**DATED** this 2nd day of July, 2010.

*s/Lonny R. Suko*

LONNY R. SUKO
CHIEF UNITED STATES DISTRICT JUDGE

ORDER - 39